Bell, J.
An understanding of the questions presented by this appeal requires a brief summary of the evidence as found in the record.
Mrs. Masters was confined in the Columbus State Hospital almost constantly from August 1952 until about five weeks prior to the filing of the complaint herein. During that confinement, her husband, Ralph W. Masters, who had the care of these children, left them in the home of the Finks upon the recommendation of the executive secretary of the Child Welfare Board of Muskingum County. At the time he left the children with the Finks, Masters arranged to pay them $75 per month for the support of the children.
Masters made payments to the Finks for a few months and then removed himself to Nevada and ceased making any payments. In December 1954, he wrote to the Finks suggesting that they adopt the children, and a few days later he signed a consent to their adoption. Neither of the Finks made any effort to contact Mrs. Masters until after Masters had signed the consent to adoption, whereupon they wrote to her requesting her consent to the adoption. She refused, engaged counsel and appeared in response to the complaint filed by Stubbins.
Mrs. Masters testified that during the more than two years she was in the state hospital she had no source of revenue with which to support the children and was unaware of their where *505 abouts at the time of her release. She is presently employed and testified that she desires her children and is able to care for them.
It should be noted at this point that no issue is raised herein concerning the social, moral or economic fitness of either the Finks or Mrs. Masters to care for these children. The issue is solely whether there is sufficient evidence to support the charge of neglect.
Section 2151.27, Eevised Code, provides for the filing of a complaint by any person having knowledge of a child under 18 who appears to be delinquent, neglected or dependent. It provides further that “such application or sworn complaint may be upon information and belief and shall be sufficiently definite by using the word delinquent, neglected, dependent * * * as the facts may be.”
The complaint recites that the complainant “has knowledge of two certain children * * * who appear to be neglected children.”
Section 2151.03, Eevised Code, defines a “neglected child” as including any child:
“(A) "Who is abandoned by his parents, guardian or custodian ;
“(B) Who lacks proper parental care because of the faults or habits of his parents, guardian, or custodian;
“(C) Whose parents, guardian or custodian neglects or refuses to provide him with proper or necessary subsistence, education, medical or surgical care, or other care necessary for his health, morals or well being.”
The question thus presented is whether as a matter of law a mental illness resulting in confinement in a mental hospital is sufficient evidence of abandonment, fault, neglect or refusal to provide as to bring one so afflicted within the purview of the above section.
“Abandon” is defined in Webster’s New International Dictionary (2 Ed.) as “to relinquish or give up with the intent of never again resuming or claiming one’s rights or interests in.” Bouvier’s Law Dictionary (Baldwin’s Century Edition) defines abandonment by husband or wife as “the act of a husband or wife who leaves his or her consort willfully, and with an inten *506 tion of causing perpetual separation.” The substitution of “child” for “consort” in the above definition is appropriate. The confinement of Mrs. Masters and her actions following her release negate any intention on her part to abandon her children.
A “fault” is defined in Webster by such words as “blame,” “censure,” “a moral failing less serious than a vice.” Surely in this enlightened age no court can censure or blame one unfortunately afflicted with a mental illness or find from such illness alone that there is a moral failing resulting in a lack of proper parental care.
“Habit” is defined by Webster as “an aptitude or inclination for some action acquired by frequent repetition and showing itself in increased facility of performance or in decreased power of resistance.” Such aptitudes or inclinations as would result in a lack of proper care would have to be those that are generally designated “bad habits.” Mental illness caused by circumstances beyond one’s control does not fall in that category.
Again referring to Webster, we find that “neglect” is defined as “disregard of duty, from indifference or willfulness,” and “refusal” is defined as the “denial of anything demanded, solicited or offered for acceptance.” Both these definitions, using words such as “disregard” and “denial,” connote willfulness. One confined to a mental hospital for two years, without funds and without even certain knowledge of her children’s whereabouts, can not, in our opinion, be guilty of a willful neglect of those children. And the only “refusal” contained in the record of this case is the mother’s refusal to give up her children at the time she learned of their whereabouts.
The claim is made here, and was made in the Court of Appeals, that the ruling of the Juvenile Court was not a final appealable order. Although there is a line of authority in some Court of Appeals decisions to the effect that Section 1639-51, General Code (Section 2151.52, Eevised Code), limits appeals from orders made under Section 1639-1 et seq., General Code (Section 2151.01 et seq., Eevised Code), to those involving prosecutions of adults (see In re Hayes, 62 Ohio App., 289, 23 N. E. 12d], 956; In re Griffin, 73 Ohio App., 110, 55 N. E. [2d], 133), we believe the better line of reasoning is that adopted by the Court of Appeals here and in the case of In re Hock, 55 Ohio Law Abs.,
*507 73, 88 N. E. (2d), 597, where the court found its power to adjudicate on the merits from the general rights of appeal from all final orders under Section 6, Article IY of the Ohio Constitution. It is hard to conceive of an order more final than one made against a mother permanently committing her children to the custody of an agency for the purpose of placing them for adoption.
Although considerable doubt has been cast by some members of this court on the propriety of the order placing these children in the custody of the Child Welfare Board for the purpose of placing them for adoption with a particular family, the view we have taken of this case precludes the necessity of deciding that question.
We can not subscribe to complainant’s contention that the Court of Appeals substituted its judgment for that of the Juvenile Court, because we find, as did the Court of Appeals, that there is no evidence in this case to warrant the determination that these children were “neglected” within the meaning of the statute.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman and Stewart, JJ., concur.
Taet, J., concurs in paragraph one of the syllabus.